[No. 12582.   Department One.   November 17, 1915.]

## SARAH J. RIDPATH, *Respondent*, v. C. B. CLAUSIN, *as Receiver etc., Appellant.*[1]

LANDLORD AND TENANT—LEASE — COVENANT FOR IMPROVEMENTS BY TENANT — BREACH — DAMAGES — WAIVER.   Upon the surrender of a lease, the lessee is not liable in damages for the breach of its covenant to put in a new store front and make certain improvements, where the work was abandoned with the consent of the lessor, who took possession and rented the premises to new tenants in the condition they were then in, with the privilege of making such improvements as the new tenants desired; since the covenant was waived by the lessor.

SAME—LEASE—COVENANTS FOR IMPROVEMENTS—INTENT—WAIVER— EVIDENCE.   In such a case, where the covenant was to put in a new store front costing not less than $750, the fact that a bond given by the lessee to secure performance was a bond of indemnity only, is some evidence of the intention of the parties that the agreement was to indemnify the lessor against loss, rather than the assurance of a liquidated indemnity irrespective of actual loss or of waiver of the covenant.

SAME.   It is also evidence of waiver by the lessor that the agent of the lessor stated to the agent of the bonding company that the lessor desired to waive the requirement for the store front under the plans theretofore agreed upon and that the company conditionally consented to the abandonment of putting ·in the front; as the lessor could not change the plans agreed upon and insist upon a front of another kind without waiving the covenant.

SAME.   It is competent, to show a waiver of the lessee's covenant to make certain improvements in the upper story, to prove that the upper story had been sublet and partitions put in suitable to the subtenancy, that the lessor had accepted the tenancy of the sublessee, without requesting performance of the covenant, and that removal of the partitions would have amounted to an eviction.

[1]Reported in 152 Pac. 711.

·SAME—COVENANT FOR·IMPROVEMENTS—DAMAGES. In an action for damages for breach of the lessee's covenant to make certain improvements, the lessor must elect whether to treat a vault as a damage to be removed or as an improvement, and cannot recover the cost of removal and also the value of iron doors, which were removed by the lessee.

SAME—COVENANT FOR IMPROVEMENTS—MEASURE OF DAMAGES. The measure of damages for the lessee's breach of covenant to make improvements is the actual loss sustained, whether it be the cost of restoring the building or the reasonable cost of making the improvements.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered June 23, 1914, upon findings in favor of the plaintiff, in ·an action on contract, tried to the court. Reversed.

*Samuel R. Stern,* for appellant.

*J. M. Simpson,* for respondent.

CHADWICK, J.—On April 1, 1908, respondent leased a certain store building in the city of Spokane to the E. J. Hyde Jewelry Company for a period of five years. It was stipulated in the lease that the lessee should "put in a modern, up-to-date front in said building, and make all interior repairs during the life of this lease and without any cost to the party of the first part." The Hyde Jewelry Company, of which the present appellant is receiver, failed and neglected for a long time to perform this stipulation in the lease. On the 18th day of January, 1913, respondent demanded that her lessee comply with its covenant. This it agreed to do on or before the 1st day of April, 1913, and gave a bond conditioned for the performance of its promise. After spending the sum of $191, the work was stopped because of the financial condition of the lessee. A short time thereafter, the receiver vacated the building.

This action was brought to recover the sum of $750, as damages "agreed upon for failure of the E. J. Hyde Jewelry Company to put in a modern up-to-date store front." For

a second cause of action, respondent demanded damages in the sum of $500, alleging a violation of the terms of the lease, in that the lessee did not make its own interior repairs and place and put in order all changes of conditions, stairways, etc.; and for a third cause of action alleged that the lessee left the building in a bad condition, in that it placed therein a brick vault, had removed stairways, cut holes in the floor at different places, removed partitions and tore off plastering, to the damage of respondent in the sum of $200.

The case went to trial upon the general issues, and upon the affirmative defenses that respondent had waived the covenants of the lease, and that she had been in no way damaged by the alleged breaches of it. The court below entered a judgment in favor of respondent for the sum of $750, less $191, upon the first cause of action, for the sum of $500 upon the second cause of action, and for the sum of $200 upon the third cause of action.

The first question involved is whether a tenant is answerable in damages for the failure to make improvements, where the tenant offers to prove that the work was abandoned with the consent of the landlord, and that, at the termination of the lease, the landlord took possession of the premises and rented them to another tenant in the condition they were then in, with the privilege of making such improvements and alterations as the necessities of the new tenant might require. The permanent improvement which the tenant covenanted to make was a modern store front to cost not less than $750. To guarantee the performance of this particular covenant, the tenant executed a surety bond which is in form, and was found by the trial judge to be, a bond for indemnity only. The appellant, as receiver for the tenant corporation which executed the lease, undertook to show, by pleading and by proof, that respondent had waived the covenant by conduct, and that no damage had resulted to her by reason of the omission of the lessee. The court rejected all proffers of proof, holding that it mattered not to what use the landlord had put the property

upon reentry, the tenant was bound by the covenants of his lease; that it had made the promise to put in the store front and to leave the premises in the same condition they were in when let. The court said, speaking of the answer,

"I don't see as it amounts to anything, that part of it, [meaning the defenses we have alluded to] because this is an agreement, and being an agreement that don't make any difference. If two parties agree, one to do a certain thing and the other to do a certain thing, it isn't any excuse for it to fail to perform his part of the contract that the other party would [*not*] be damaged by it."

The court held that there was no waiver unless the appellant could prove that the respondent refused to permit it to put in the front and to remove certain partitions and improvements which it had made for the benefit of its subtenants and for the convenience of its own business.

Counsel for appellant says that he has been unable to find any authorities. In the time we have given to the case, we have been unable to find a case directly in point. However, it does seem to us that the case can be resolved by reference to the fundamental principles of the law. This is a suit for damages. It is true that it is based upon contract, and if the respondent had brought an action presently against the appellant, we have no doubt that the contract would be binding upon the parties. That is, appellant could not have pleaded that the premises would be suitable for some other business. But it will not be denied that the covenants relied upon were inserted in the lease for the benefit of the landlord, and she might waive them if she saw fit to do so. She may waive them by words or by conduct, so that the case after all comes down to the proposition whether there was a damage. If it appears that, instead of bringing a present action, the respondent did not desire the front put in, and consented to an abandonment of the work; that she accepted the tenancy of the occupants of the upper floors and collected the rents from them; that the changes and alterations made in the

upper floors were for the benefit of the tenants of those floors and are convenient and desired by them; she could not recover upon the letter of her contract. The purpose of the several covenants was to save respondent from any loss or damage by reason of the tenancy. In the absence of words or conduct or subsequent agreement, the law will imply the damage; but where a waiver is made to appear, the law will presume that the omission as well as the alterations were made for the benefit of the reversion.

The trial judge, although admitting that the bond was a bond of indemnity and not a guarantee of liquidated damages, held that the parties were nevertheless bound by the contract and not by the bond. As a broad proposition, this may be true, but in the light of all the circumstances, we think the bond is some evidence of the intention of the parties, and, when so considered, it sustains the theory of the appellant that it was the agreement of the parties that respondent should be indemnified against loss, rather than to have the assurance of a liquidated indemnity irrespective of actual loss or any waiver by subsequent agreement or contract.

As a further evidence of waiver, appellant undertook to show that the agent of the respondent, finding that it was doubtful whether the lessee would pay for the installation of the store front which it had begun and upon which it had expended the sum of $191 for labor and material, went to the agent of the bonding company and asked his permission to abandon the improvement which was being made. The agent of the bonding company testifies that the agent of the respondent desired to waive the requirement for the store front and the contract, which had been made by the tenant with a third party, to put in a front upon plans which had been agreed upon between the landlord and the tenant, but that he, the agent of respondent, wanted the bond to hold although the work was abandoned; the theory of the appellant being that the front which had been agreed upon was especially

adapted for the uses of a jewelry store, and when it appeared that the tenant would be financially unable to complete the work and continue as a tenant, respondent desired to hold the matter in such shape that, if the premises were leased to another, a front would be put in that would be more adapted to the uses of whomsoever might become a tenant. The agent of the company further testified that, at the request of the agent of the respondent, he wrote a letter, of which the following is a copy:

"C. F. Lucas, Agent,                     April 8th, 1913.
     "City.
"Dear Sir: Referring to the bond given by this company to the E. J. Hyde Jewelry Company covering the construction of a new front in the premises occupied by that company, we wish to say that it is entirely satisfactory to us that you permit the Jewelry Company or its successors or assigns, to abandon the putting in of this front, provided all damage to the building up to this time be taken care of, and that all bills for labor and material up to date be paid.
                    "Very truly yours,
              "Fidelity and Deposit Company of Maryland.
                         "By . . . . . . . . . ."

This is some evidence of a waiver, proper to be considered by a jury in connection with all of the other facts and circumstances attending the negotiations of the parties. It is some evidence that respondent did not want the store front, the plans for which had been agreed upon and which was suited to the uses of a jewelry store, put in. The admitted facts in the case preclude a holding that respondent could insist upon a front of her own choosing to cost up to the sum of $750. The whole intendment of the original lease is that the front should be adapted to the tenancy, and, besides, the parties had agreed upon formal plans drawn by a builder. Having so agreed, she could not insist upon a front of another kind.

The second cause of action seems to go to the failure of the tenant and this appellant to remove certain partitions,

etc., in the second and third stories. These stories had been
sublet by the Hyde Jewelry Company to the proprietor of a
Chinese noodle restaurant. Partitions had been made to suit
the demands of the business. Appellant undertook to prove
that the business of the restaurant had continued without in-
terruption and that respondent had accepted the tenancy of
the sublessee, who had attorned to her; that the removal of
the partitions would have been destructive of the tenancy and
equivalent to an eviction, and that respondent had made no
request that the covenant be performed. We think this testi-
mony was competent as tending to show a waiver. The ac-
ceptance of the tenancy of the sublessee and the receipt of
rent would, in legal effect, be a continuation or renewal of
the lease as to the second and third stories for the benefit of
respondent, in so far as appellant is concerned.

As to the third cause of action, which involves the lower
floor and basement, the same rules will apply, although it is
likely that respondent has suffered real damages in respect
to them. We think, however, that respondent should elect
whether she will treat the vault as an improvement or as a
thing to be removed. As the record comes to us, she seems
to be asking for the reasonable cost of removal, and at the
same time is asking for the sum of $100, the value of the iron
doors which, it is alleged, appellant wrongfully removed.

Taking a broad vision of the case, these things seem evi-
dent: The covenants relied on were for the benefit of the
landlord. Covenants, like all contracts involving benefits to
the promisee, may be waived. There is nothing in the record
upon which a promise to pay a liquidated sum can be predi-
cated, the bond being rightfully held to be a bond of indem-
nity. The right of respondent is, therefore, no more than a
right to recover damages. The general rule is that damages
for a breach of a covenant are to be measured by the actual
loss to the covenantee. The measure is the loss sustained,
whether it be the cost of restoring the premises to their
former condition or the reasonable cost of making the im-

provement—the putting in of the store front. As against this right, appellant may defend, submitting all facts and circumstances tending to show a ratification of the conduct of appellant or a waiver of the covenants.

The case is for the jury, and will be remanded for a new trial.

Morris, C. J., Mount, Main, and Holcomb, JJ., concur.